**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| CASEY J. BASTIAN,<br><br>Petitioner,<br><br>v.<br><br>ACTING WARDEN WASHINGTON, FCI FAIRTON,<br><br>Respondent. | Civ. No. 24-9699 (RMB)<br><br>**OPINION** |

**RENÉE MARIE BUMB,** Chief United States District Judge

This matter comes before the Court upon Petitioner Casey J. Bastian's *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, Dkt. No. 1 (“Petition” or “Pet.”), as amended, Dkt. No. 11 ("Amended Petition" or “Am. Pet.”). Petitioner challenges a prison disciplinary conviction that resulted in the loss of twenty-seven days of good conduct time credit. Respondent answered, Dkt. No. 13 ("Answer"), and Petitioner replied, Dkt. No. 16 ("Reply"). The Court decides the Amended Petition without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court denies the Amended Petition.

## I. BACKGROUND

The relevant background is drawn from the parties’ respective submissions, and the material events are undisputed. Petitioner is a federal inmate incarcerated at the

Federal Correctional Institution ("FCI") in Fairton, New Jersey, serving an aggregate 600-month sentence imposed by the United States District Court for the Northern District of Iowa for sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and 2251(e) and receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). (Declaration of Sandra Bober ("Bober Decl."), Dkt. No. 13-2 ¶ 2; Northern District of Iowa Judgment, dated Sept. 1, 2009, Dkt. No. 13-3 at 2.) The sentence consists of 360 months of imprisonment for Count One and a consecutive 240 months for Count Two. (Northern District of Iowa Judgment, Dkt. No. 13-3 at 3.)

**A. Disciplinary Proceedings**

On January 18, 2023, while Petitioner was incarcerated at United States Penitentiary Terre Haute in Terre Haute, Indiana, staff member J. Gilbert ("Gilbert") issued an incident report, charging him with possessing stolen property, in violation of the Bureau of Prisons' ("BOP") Disciplinary Code 226, and destroying property valued at $100 or less, in violation of Code 329. (Incident Report, dated Jan. 18, 2023, Dkt. No. 13-3 at 55-57.) The Incident Report describes the incident as follows:

> Inmate BASTIAN, CASEY, #10753-029 was in possession of a stolen Trust Fund six-foot-cord. This cord was found in a common area of cell 213. Inmate Bastian is housed with inmate Weakley, Paul, Reg. No. 07275-040. This cord was cut at both ends. One of the ends was located in another common area of cell 213. Each six-foot-cord cost Trust Fund $10.95 each.

(*Id.* at 55.)

A photograph also depicted the recovered cord. (Photograph, Dkt. No. 13-3 at 59.)

An investigating lieutenant delivered the Incident Report to Petitioner the next morning, advised him of his right to remain silent, recorded his plea of not guilty, reviewed the photograph, and reported that Petitioner requested no witnesses. (Incident Report, Dkt. No. 13-3 at 55, 57.) On January 23, 2023, the Unit Discipline Committee ("UDC"), chaired by B. Carson ("Carson"), referred the charges to a Discipline Hearing Officer ("DHO") for final disposition. (*Id.* at 56.) On the same day, Petitioner received written notice of his hearing and acknowledged his hearing rights. (Notice of Discipline Hearing Before the DHO, dated Jan. 23, 2023, Dkt. No. 13-3 at 63.) He selected A. Stockram ("Stockram") as his staff representative and marked that he did not wish to call witnesses. (*Id.*) Petitioner also signed a form, acknowledging that staff advised him of his rights, including the right to receive written notice of the charges at least twenty-four hours in advance of the hearing, to receive assistance from a readily available staff member, to call witnesses, present witness statements and introduce evidence, to present a statement or remain silent, to appear throughout the hearing, to receive written notice of the DHO's decision and the facts supporting the decision, and to appeal the DHO's decision through the administrative remedy process. (Inmate Rights at Discipline Hearing Form, dated Jan. 23, 2023, Dkt. No. 13-3 at 61.)

Before the hearing, Petitioner sent messages asking staff to preserve surveillance footage, photographs, and the cord, which he claimed was a headphone cord rather than Trust Fund property. (Reply, Dkt. No. 16 at 7-8.) He also asked to discuss the

matter with his staff representative. (*Id.*)

On February 1, 2023, Petitioner appeared before the DHO for his disciplinary hearing with Stockram appearing as his staff representative. (DHO Report, dated Feb. 14, 2023, Dkt. No. 13-3 at 67-70.) Stockram stated that he met with Petitioner prior to the hearing and that Petitioner made no specific request other than Stockram's presence. (*Id.* at 67.) At the hearing, Petitioner denied the charges from the Incident Report and stated that the stolen cord "was not mine." (*Id.*) Petitioner also waived witnesses and presented no documentary evidence. (*Id.* at 67-68.)

The DHO found that Petitioner committed a Code 226 violation. (*Id.* at 69.) The DHO relied on the Incident Report, the photograph, Petitioner's statements, and the location of the cord in a common area of his cell. (*Id.*) The DHO explained that because the cord was found "in a common area of [Petitioner's] cell" and because he did not refute that the stolen cord was found inside his cell, Petitioner engaged in the elements of the prohibited act. (*Id.*) As a result, the DHO imposed the following sanctions: (1) Disallowance of twenty-seven days of good-conduct time, (2) loss of telephone privileges for 90 days, and (3) monetary restitution of $5.47. (*Id.*) The DHO completed the report on February 14, 2023, and delivered it to Petitioner on February 22, 2023. (*Id.* at 69-70.)

**B. Exhaustion of Administrative Remedies**

According to the BOP, Petitioner has exhausted his administrative remedies with respect to the DHO disciplinary hearing administrative appeal. (*See generally*

Inmate Request to Staff, dated Mar. 31, 2023, Dkt. No. 11-1; Regional Administrative Remedy Appeal, dated June 20, 2023, Dkt. No. 11-2; *see also* Administrative Remedy Generalized Retrieval, dated Mar. 19, 2025, Dkt. No. 13-3; Sandra Bober Declaration ("Bober Declaration"), Dkt. No. 13-2 ¶ 6.) On May 4, 2023, Petitioner submitted an institutional administrative remedy concerning the disciplinary proceeding and alleged staff misconduct, and he received a response on May 25, 2023. (Bober Declaration ¶ 6.) Petitioner appealed to the Regional Director on June 26, 2023, and received a response on August 16, 2023. (*Id.*) On September 18, 2023, Petitioner appealed to the BOP's Central Office, which responded on October 6, 2023. (*Id.*)

**C. Procedural History**

On October 9, 2024, Petitioner filed the Petition. (Dkt. No. 1.) On January 13, 2025, this Court granted Petitioner's request to file an amended petition. (Dkt. No. 7.) Petitioner alleges that, (1) J. Gilbert improperly wrote the Incident Report without participating in the cell search; (2) the investigation was deficient; (3) Carson both searched the cell and chaired the UDC; (4) Stockram failed to assist him; (5) officials denied him witnesses and requested evidence; (6) the DHO was biased; (7) the finding lacked evidentiary support; (8) the DHO Report was not timely delivered; and (9) the sanctions were excessive. (Am. Pet., Dkt. No. 11 at 5-9.) For relief, Petitioner seeks vacatur of the disciplinary conviction, restoration of his twenty-seven days of good conduct time, expungement of the incident report, correction of the resulting BOP records, and any other appropriate relief. (*Id.* at 10.)

In reply, Petitioner submitted his declaration, a declaration from Weakley,

copies of messages concerning his requests to preserve evidence, and a request for the Court to take judicial notice of a separate May 2025 disciplinary incident at FCI Fairton. (Reply, Dkt. No. 16 at 7-11; Bastian Declaration ("Bastian Decl."), Dkt. No. 16-1; Request for Judicial Notice, Dkt. No. 16-2.)

## II. DISCUSSION

### A. Governing Law

28 U.S.C. § 2241 provides, in relevant part, as follows:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
>
> . . .
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

"A challenge . . . to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's confinement." *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). "Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." *Denny v. Schultz*, 708 F.3d 140, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b)); 28 C.F.R. § 523.20 (2008). When such credits are at stake, due process requires: (1) an impartial decisionmaker; (2) written notice of the charge at least twenty-four hours before the hearing; (3) an opportunity to call witnesses and

present documentary evidence when consistent with institutional safety and correctional goals; (4) assistance if the inmate is illiterate or the issues are complex; and (5) a written statement of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 546-71 (1974).

The disciplinary finding must also be supported by "some evidence." *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 455-56 (1985). The "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." *Id.* at 455 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)). Determining whether the standard has been met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. Instead, courts should determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. The BOP has substantially adopted and in some instances gone beyond these requirements by promulgating regulations governing its disciplinary procedures. 28 C.F.R. §§ 541.1 to 541.8; *Frankenberry v. Williams*, 677 F. Supp. 793, 796 (M.D. Pa.) *aff'd*, 860 F.2d 1074 (3d Cir. 1988). Procedural errors in prison disciplinary proceedings are subject to harmless error review. *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992).

### B. BOP Disciplinary Procedure

The BOP security regulations, under Code 226, prohibit the "possession stolen property." 28 C.F.R. § 541.3 (effective January 19, 2022). When prison staff believe that an inmate has committed a prohibited act, staff will issue an incident report describing the incident and the prohibited act charged. 28 C.F.R. § 541.5(a). The inmate will ordinarily receive the incident report within 24 hours. *Id.* A different staff member will investigate and refer the incident report, if appropriate, to a UDC for a hearing. 28 C.F.R. § 541.7. The UDC will automatically refer charges of "Greatest or High severity prohibited acts," such as Code 226, to a DHO. 28 C.F.R. § 541.7(a)(4). The DHO, an impartial decisionmaker who was not a victim, witness, investigator, or otherwise significantly involved in the incident, will hold a hearing and issue a written report explaining any sanctions imposed upon a finding of guilt. 28 C.F.R. § 541.8(b), (h). "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). The final level of administrative review is to the BOP Central Office. 28 C.F.R. § 542.15(a).

### C. Analysis

#### 1. Incident Report Investigation and UDC Review

Petitioner argues that Gilbert should not have issued the Incident Report because he was not the staff member who conducted the search of his cell. (Pet., Dkt. No. 1 at 3.) As an initial matter, Petitioner received constitutionally adequate notice of the Incident Report. *Wolff* only requires that an inmate receive "written notice of

the charges . . . no less than 24 hours . . . before [a hearing].” 418 U.S. at 564; *see also Gross v. Warden, USP Canaan*, 720 F. App'x 94, 96-97 (3d Cir. 2017). Here, the Incident Report identified the charges against Petitioner, described the recovered cord, and stated where it was found. (Incident Report, Dkt. No. 13-3 at 55-57.) It was delivered to Petitioner on January 19, 2023, thirteen days before the DHO hearing. (DHO Report, Dkt. No. 13-3 at 67.) As such, this notice comported with the minimum constitutional requirement of written notice pursuant to *Wolff*. 418 U.S. at 564.

Gilbert was also not constitutionally disqualified from writing the report because he did not search the cell. 28 C.F.R. §541.5(a) permits a staff member to issue a report when staff "witness or reasonably believe" that an inmate committed a prohibited act. The Incident Report identified Gilbert as the author and described the factual basis for the charges. (Incident Report, Dkt. No. 13-3 at 55.) Petitioner's disagreement with Gilbert's account of the incident is a defense to be brought up at the disciplinary hearing, not a defect in constitutionally required notice. Therefore, the fact that Gilbert issued the Incident Report while not being a part of the actual search does not violate § 541.5(a).

Petitioner's remaining investigation and UDC claims also fail. Petitioner alleges that his due process rights were violated during the UDC process because (1) staff member and member of the UDC, Carson, participated in the search of his cell in violation of 28 C.F.R. § 541.7(b) and (2) he never received a written copy of the UDC’s decision following its review of the Incident Report. (Pet., Dkt. No. 1 at 4; Am. Pet., Dkt. No. 11 at 6.) The investigator advised him of the charges and his rights, obtained

his response, reviewed the photograph, and referred the matter for further proceedings. (Incident Report, Dkt. No. 13-3 at 55, 57.) There is no constitutional requirement for a more extensive pre-hearing investigation. Although § 541.7(b) bars a significantly involved staff member from serving on the UDC, here, the UDC did not determine guilt or impose the challenged loss of good time credits; instead, it referred the Code 226 charge, a high severity level prohibited act, to an independent DHO. *See* 28 C.F.R. §§ 541.3 tbl. 1, 541.7(a)(4), (b); (DHO Report, Dkt. No. 13-3 at 67-70.) Even assuming Carson participated in the search, Petitioner identifies no prejudice as a result. *See Elkin*, 969 F.2d at 53; *see also Speight v. Marberry*, 2008 WL 2367296, at *7-8 (W.D. Pa. June 5, 2008) (finding allegations concerning a UDC member's conduct did not establish a due process violation because the decision to sanction the petitioner with loss of good conduct time was made by the DHO). Likewise, although 28 C.F.R. § 541.7(h) provides that an inmate "will receive a written copy of the UDC's decision following its review of the incident report[,]" failure to deliver a written copy, without more, does not establish a due process violation. *See*, *e.g.*, *Villegas-Martinez v. Moser*, 2020 WL 5237274, at *5 n.10 (W.D. Pa. Aug. 31, 2020) (finding no due process violation where, despite failure to provide the petitioner with a written copy of the UDC decision, the petitioner received the procedural protections required by *Wolff* and did not demonstrate prejudice). Therefore, the Incident Report investigation and the subsequent UDC process did not violate Petitioner's due process rights.

### 2. Staff Representative, Witnesses, and Evidence

Petitioner further contends that his chosen staff representative, Stockram, failed to assist him in presenting evidence and facts in his defense before the DHO. (Pet., Dkt. No. 1 at 4; Am. Pet., Dkt. No. 11 at 7.) Respondent argues that the record contradicts Petitioner's allegations because Stockram met with Petitioner before the hearing and Petitioner made no specific requests of Stockram, nor did he request any witnesses or additional evidence. (Answer, Dkt. No. 13 at 19-20.) Due process requires only that an inmate have a staff representative if the inmate is illiterate or the issue at the hearing is complex. *Wolff*, 418 U.S. at 570.

Here, Petitioner was not constitutionally entitled to staff assistance because he does not allege that he is illiterate and the possession charge was not complex. *See Wolff*, 418 U.S. at 570. In any event, Stockram appeared, reported meeting with Petitioner, and stated that Petitioner made no specific request of him in advance of the hearing. (DHO Report, Dkt. No. 13-3 at 67.) Therefore, Petitioner's dissatisfaction with Stockram does not warrant habeas relief.

Petitioner also challenges the DHO's decision on the following two grounds: (1) The DHO was biased, claiming that "before any hearing [he] was told that there would be a finding of guilt [] without any exculpatory evidence being reviewed or arguments heard[,]" and (2) the DHO failed to consider Petitioner's "version of the facts" and his contention that the cord recovered from his cell "was not a [T]rust [F]und cord," but instead was "a headphone cord used to repair broken headphones and was purchased." (Pet., Dkt. No. 1 at 2, 4; Am. Pet., Dkt. No. 11 at 7.) Respondent

argues that the DHO properly considered the evidence before reaching his decision. (Answer, Dkt. No. 13 at 17-18.) The DHO's decision must be supported by "some evidence." *Hill*, 472 U.S. at 455.

The record does not establish any prejudicial denial of witnesses or evidence. Petitioner signed a form stating that he did not wish to call witnesses, and the DHO Report sets forth the same waiver. (Notice of Discipline Hearing Before the DHO, Dkt. No. 13-3 at 63; DHO Report, Dkt. No. 13-3 at 68.) Petitioner's later declaration asserts that he requested Gilbert as a witness at the hearing, while his prehearing message asked to preserve evidence and to discuss the matter with Stockram. (Reply, Dkt. No. 16 at 7-8; Bastian Decl., Dkt. No. 16-1 ¶ 16.) Even assuming the DHO declined Petitioner's requests, the requested material would not have changed the constitutional sufficiency of the proceeding.

The surveillance footage was offered to show that Gilbert did not search the cell, a fact that did not prevent him from reporting information supplied by staff. The photograph was preserved and considered at the hearing. (Photograph, Dkt. No. 13-3 at 59; DHO Report, Dkt. No. 13-3 at 69.) Inspection of the cord and comparison photographs could have supported Petitioner's contention that the item was a headphone cord, but that competing inference would not negate the Incident Report and photograph identifying it as Trust Fund property. (Incident Report, Dkt. No. 13-3, at 55.) Finally, Weakley's declaration accepting responsibility for the incident, executed after the hearing, does not show that the DHO excluded available evidence. (Weakley Declaration, Dkt. No. 11-2 at 26-27.) Because the proposed evidence would

not undermine the evidence supporting constructive possession, any error was harmless. *See Elkin*, 969 F.2d at 53; *Hill*, 472 U.S. at 455.

### 3. Impartial Decisionmaker and Written Decision

Petitioner has not shown that the DHO was biased. General claims of bias, such as those here, are "not sufficient to indicate the type of 'direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge' that shows the DHO's impartiality." *Lewis v. Canaan*, 664 F. App'x. 153, 156 (3d Cir. 2016) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974)). Nothing in the record indicates that the DHO was a victim, witness, investigator, or otherwise involved in the underlying search in a direct or personal manner.

Here, the written DHO Report identified the evidence, explained the finding, listed the sanctions, and advised Petitioner of his appeal rights. (DHO Report, Dkt. No. 13-3 at 67-70.) Although Petitioner disputes the recorded February 22, 2023 delivery date, he fully exhausted his administrative appeal. (Bober Decl., Dkt. No. 13-2 ¶ 6; Bastian Decl., Dkt. No. 16-1 ¶ 21.) Therefore, Petitioner has not shown prejudice from any delay in receiving the report. *See Wallace v. Fed. Det. Ctr.*, 528 F. App'x 160, 162-63 (3d Cir. 2013); *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) ("Additionally, we note that even if the regulation had been violated, its violation is not actionable in this case, Milhouse cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him.").

### 4. Sufficiency of Evidence and Sanctions

The DHO's finding satisfies *Hill*. 472 U.S. at 455. The "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *Id.* (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)). The Incident Report stated that a stolen Trust Fund cord was found in a common area of Petitioner's two-person cell, and the photograph corroborated the recovery. (Incident Report, Dkt. No. 13-3 at 55.) The DHO considered Petitioner's denial, but gave greater weight to the report and photograph. (DHO Report, Dkt. No. 13-3 at 69.) Discovery of contraband in a cell shared by only two inmates is some evidence of each occupant's constructive possession. *See Denny*, 708 F.3d at 145-47. Weakley's later assertion that he was responsible and Petitioner's alternative explanation for the cord invite the Court to reweigh evidence, which *Hill* forbids. 472 U.S. at 455-56.

Moreover, Petitioner argues that the sanction of the disallowance of twenty-seven days of good conduct time was unjust. (Pet., Dkt. No. 1 at 5; Am. Pet., Dkt. No. 11 at 9.) Prohibited acts are categorized according to the severity of the conduct. Code 226, Possession of Stolen Property, is a "high severity level prohibited act," according to 28 C.F.R. § 541.3(b) and Table 1. Permissible sanctions for high severity level prohibited acts include the disallowance of "between 25% and 50% (14-27 days) of good conduct time credit available for [a] year." *Id.* Even when the sanctions imposed exceed the "ordinary sanction," it does not violate due process when the sanctions fall within the sanctions in the applicable regulation. *See, e.g.*, *Wallace v. Ebbert*, 505 F.

App'x 124, 125 (3d Cir. 2012) ("nothing in Table 1 prohibited the DHO from disallowing a greater percentage of [the inmate's] good conduct time in an effort to deter him from future infractions."). The Court finds that the sanction of twenty-seven days was authorized because it fell within the regulatory range and, therefore, the Court denies habeas relief.

**5. Request for Judicial Notice**

Finally, Petitioner asks the Court to take judicial notice of a May 2025 incident at FCI Fairton in which a different UDC allegedly dismissed a charge involving property found in another shared cell. (Request for Judicial Notice, Dkt. No. 16-2.) The Court may notice the existence of the submitted records, but not Petitioner's disputed factual account or his proposed inference from it. *See* Fed. R. Evid. 201(b) ("The [C]ourt may judicially notice a fact that is not subject to reasonable dispute."). The request is denied to the extent Petitioner seeks judicial notice of disputed facts or legal conclusions.

## III. CONCLUSION

Based on the foregoing reasons, the Court denies the Amended Petition (Dkt. No. 11) and Petitioner's request for judicial notice (Dkt. No. 16-2). An appropriate Order follows.

Dated: **November 10, 2026**

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge